UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CONTRERAS,<br>Plaintiff,<br>v.<br>NANCY A BERRYHILL,<br>Defendant. | Case No. 19-cv-00154-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 14 |

Plaintiff Christopher Contreras seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed for Title II disability benefits on July 17, 2014. (Administrative Record ("AR") 486.) Plaintiff asserted disability beginning June 7, 2013. (AR 486.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 389, 397.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"); the hearing was held on April 18, 2017. (AR 251, 402.)

Following the hearing, the ALJ denied Plaintiff's application on April 18, 2017. (AR 20-32.) A request for review of the ALJ's decision was filed with the Appeals Council on August 24, 2018. (AR 481.) The Appeals Council denied Plaintiff's request for review on November 7,

2018. (AR 1.) On January 9, 2019, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

Plaintiff filed his motion for summary judgment on May 9, 2019. (Pl.'s Mot., Dkt. No. 13.) Defendant filed an opposition and cross-motion for summary judgment on June 6, 2019. (Def.'s Opp'n, Dkt. No. 14.) Plaintiff filed his reply on June 10, 2019. (Pl.'s Reply, Dkt. No. 15.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the

fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

### III. DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ's failure to consider Plaintiff's chronic pain syndrome in determining the RFC, (2) the ALJ's failure to give more weight to Plaintiff's treating physician and the state agency doctors, and (3) the ALJ's failure to address Plaintiff's concentration issues. (Pl.'s Mot. at 16.)

#### A. Failure to Consider Chronic Pain Syndrome

Plaintiff argues that the ALJ erred in not only failing to consider Plaintiff's chronic pain syndrome as a severe impairment, but in failing to recognize it at all. (Pl.'s Mot. at 16-17.)

The Court agrees that the ALJ erred. In identifying Plaintiff's severe impairments, the ALJ only identified Plaintiff's degenerative disc disease of the lumbar spine. (AR 22.) The ALJ never specifically addressed Plaintiff's chronic pain syndrome, despite summarizing numerous medical findings, medical opinions, third-party statements, and Plaintiff's testimony that stated Plaintiff suffered from pain, and that Plaintiff's pain impacted his ability to work. (AR 26-31.)

Defendant argues that the error is harmless because Plaintiff did not state what additional limitations the ALJ should have included in the RFC. (Def.'s Opp'n at 5-6.) The Court disagrees that the error is harmless. First, Plaintiff does identify additional limitations, including his ability to concentrate. (Pl.'s Mot. at 20-21.) Second, and more significantly, as discussed below, many of the limitations opined by Plaintiff's treating physician and the state agency doctors were

3

directly attributed to Plaintiff's pain. Accordingly, the Court finds that the ALJ erred in not specifically considering Plaintiff's chronic pain syndrome.

### B. Failure to Properly Weigh Medical Opinions

The court "distinguish[es] among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing reasons.'" *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). If a treating physician's medical opinion is contradicted by another doctor, the ALJ must identify specific legitimate reasons supported by substantial evidence to give more weight to the non-treating doctor's opinion. *Id.*

#### i. Dr. Massey

John Massey, M.D., is Plaintiff's treating physician. Unlike the ALJ's RFC, which found that Plaintiff was capable of performing a full range of light work, Dr. Massey opined in June 2015 that Plaintiff would be able to sit, stand, and/or walk less than two hours in an eight-hour workday, would need a sit-stand option, lift and/or carry twenty pounds occasionally and ten pounds frequently, rarely twist and bend, and never crouch or climb ladders and stairs. (AR 26, 1024-25.) Dr. Massey also found that Plaintiff would miss more than four days of work per month. (AR 1026.) In October 2016, Dr. Massey opined that Plaintiff could stand for ten minutes at a time, lift ten pounds occasionally and less than ten pounds frequently, and occasionally stoop while carrying weight. (AR 618-19.)

The ALJ gave little weight to Dr. Massey's opinion. (AR 30.) The Court finds that the ALJ's reasons in rejecting Dr. Massey's opinion are not specific legitimate reasons supported by

substantial evidence.[1] *See Lester*, 81 F.3d at 830.

First, the ALJ found that Dr. Massey made no observations about muscle weakness. It is not clear, however, why this is relevant to Dr. Massey's findings, as there is no suggestion that Dr. Massey's findings were related to muscle weakness. Rather, Dr. Massey's opinions were based on Plaintiff's suffering from pain. For example, in his June 2015 opinion, Dr. Massey explained that Plaintiff had constant pain that was variable in intensity, and would be aggravated by bending, carrying, sitting, and standing. (AR 1023.) Likewise, in his October 2016 opinion, Dr. Massey noted that Plaintiff's limitations of lumbar spine motion were "due to pain." (AR 616.) He also stated that Plaintiff was receiving care from a pain specialist. (AR 619.) Thus, the fact that Dr. Massey made no observations about muscle weakness is not inconsistent with his opined limitations. *See Marshall v. Berryhill*, Case No. 16-cv-666-BAS-PCL, 2017 U.S. Dist. LEXIS 73756, at *43 n.14 (S.D. Cal. May 12, 2017) (faulting ALJ for failing to "specify how normal muscle strength and full range of joint motion undermine reports of pain related to [the plaintiff's] chronic pain syndrome or migraines").

Second, the ALJ found that Dr. Massey opined that Plaintiff suffered from the described limitations since February 1995, which would have rendered the claimant unable to work. (AR 30, 1026.) Plaintiff, however, continued to work until 2013. (AR 30.) Plaintiff acknowledges this discrepancy, but responds that Dr. Massey was likely explaining that the impairments stemmed from Plaintiff's 1995 accident. (Pl.'s Mot. at 19.) Plaintiff further notes that Dr. Massey had only treated Plaintiff since June 2014. (*Id.*; *see also* AR 1023.) The Court finds that while this appears to be an error, this is not alone a reason to reject Dr. Massey's opinion entirely. It does not affect or relate to his other medical opinions, as Dr. Massey had only treated Plaintiff starting in June 2014, more than nine years after the February 1995 accident. Dr. Massey's opinion of the onset date was not dependent on when the limitations started. At most, this would

---

[1] The ALJ gave great weight to the opinion of Nayyar Masood, M.D., a consultative examiner. (AR 29.) Contrary to Dr. Massey, Dr. Masood opined that Plaintiff could sit for six hours, stand and walk for six hours, and lift, push, and pull thirty pounds occasionally and fifteen pounds frequently. (AR 29.) Thus, there is a conflicting medical opinion and the ALJ need only identify specific legitimate reasons to reject Dr. Massey's opinion.

5

1  be a reason to reject Dr. Massey's opinion about when the limitations started.

2  Finally, the ALJ found that Dr. Massey's opinions were "inconsistent with the generally conservative nature of the claimant's impairments." (AR 30.) In support, Defendant focuses on the normal findings in the record of full motor strength and normal gait. (Def.'s Opp'n at 3-4.) Again, however, Plaintiff's full motor strength and normal gait are not necessarily relevant to the limitations described, as those related to pain. An individual can have full motor strength and normal gait, but be unable to sustain or perform certain activities due to pain.

Further, the ALJ focused repeatedly on Plaintiff's "conservative" treatment, but the record clearly demonstrates that Plaintiff's treatment was not conservative. On June 25, 2014, Dr. Massey observed that Plaintiff's "treatment to date has been conservative and yet complex," including "rest, medications, physical therapy, chiropractic, acupuncture [sic] but culminated in a [intradiscal electrothermal therapy]." (AR 920.) After this observation, however, Plaintiff's treatment included stem cell therapy, as well as eight series of trigger point injections between September 1, 2016 and February 15, 2017. (*See* AR 834, 920, 1693, 1695, 1697, 1699, 1701, 1703, 1705, 1707.) These injections included four trigger point injections on September 1, 2016, four trigger point injections on September 9, 2016, ten trigger point injections on September 26, 2016, three trigger point injections on October 11, 2016, twelve trigger point injections on November 29, 2016, twelve trigger point injections on December 6, 2016, ten trigger point injections on December 15, 2016, and ten trigger point injections on February 15, 2017. (AR 1693, 1695, 1697, 1699, 1701, 1703, 1705, 1707.) Numerous courts have rejected the argument that trigger point injections are "conservative." *See Birkenstein v. Colvin*, Case No. SA CV 12-1525-SP, 2013 U.S. Dist. LEXIS 104636, at *26 (C.D. Cal. July 25, 2013) ("trigger point injections may not be considered conservative"); *Christie v. Astrue*, Case No. CV 10-3448-PJW, 2011 U.S. Dist. LEXIS 105918, at *10-11 (C.D. Cal. Sept. 16, 2011) (finding that while treatments such as trigger point injections "may not be the most aggressive available, like surgery, for example, they are certainly not what the Court would categorize as conservative"); *Brown v. Astrue*, Case No. CV 12-1902-SP, 2013 U.S. Dist. LEXIS 3544, at *28-29 (C.D. Cal. Jan. 9, 2013) ("trigger point injections may not be considered conservative"); *Lapeirre-Gutt v. Astrue*, 382 Fed.

Appx. 662, 664 (9th Cir. 2010) (suggesting that treatments such as occipital nerve blocks and trigger point injections did not constitute conservative treatment). As Plaintiff's treatment cannot be deemed conservative, the Court finds that this is not a specific legitimate reason for giving Dr. Massay's opinion little weight.

Accordingly, the Court finds that the ALJ erred in giving Dr. Massay's opinion little weight because he failed to identify any specific legitimate reasons.

### ii. State Agency Doctors

Plaintiff also challenges the ALJ's decision to give little weight to the opinions of the state agency doctors. (Pl.'s Mot. at 19.) "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Dr. I. Ocrant opined that Plaintiff would be able to stand and/or walk for three hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, and scaffolds. (AR 366-68.) On reconsideration, Dr. H. Samplay concurred with these findings. (AR 383-85.) The ALJ gave little weight to these opinions because they were "inconsistent with the generally conservative nature of the claimant's impairments," and also "inconsistent with treatment records from August 2016[, which] detail that the claimant's gait was stable, coordinated, and smooth." (AR 29.)

As with Dr. Massey, the ALJ's finding that these opinions were inconsistent with the "conservative" nature of the claimant's impairments is not based on specific evidence in the record. Further, the finding that Plaintiff's gait was stable, coordinated, and smooth does not necessarily contradict the state agency's doctors findings. Dr. Samplay, for example, specifically identified pain in his explanation of findings. (AR 385.) Findings of gait also do not address the state agency doctors' opinions about ability to stand, walk, balance, crawl, and climb throughout an eight-hour workday. *See Stradley v. Berryhill*, Case No. 1:16-cv-423-EJL-CWD, 2017 U.S. Dist. LEXIS 191080, at *14 (D. Idaho Oct. 30, 2017) ("gait simply refers to the manner of walking, not the ability to sustain walking for a period of time over the course of an 8-hour work day"). Accordingly, the Court finds that the ALJ erred in giving little weight to these opinions.

7

### C. Ability to Concentrate

Finally, Plaintiff argues that the ALJ failed to properly address Plaintiff's issues with concentration. (Pl.'s Mot. at 20-21.) In finding that Plaintiff had only "mild limitation" in concentrating, persisting, or maintaining pace, the ALJ pointed to Plaintiff's ability to pay bills, count change, handle a savings account, and use a checkbook/money orders. (AR 25.) The ALJ also noted that although Plaintiff testified that he was frequently distracted due to pain, he was still able to participate in a weekly podcast.[2] (AR 25.) Further, the ALJ specifically rejected Plaintiff's reporting of his concentration problems, noting that this was inconsistent with Plaintiff's research on the Sasquatch (the subject of the weekly podcast), his report that he worked on patents, and caring for his son. (AR 31; *see also* AR 265-66, 946, 1010.)

Plaintiff does not explain why these reasons do not support the ALJ's findings. Instead, Plaintiff only points to other parts of the record that demonstrate Plaintiff's struggles with concentration. (Pl.'s Mot. at 21; Pl.'s Reply at 8.) The Court, however, must "affirm the ALJ's findings of fact if they are supported by substantial evidence and if the ALJ's decision was free of legal error. Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018). While Plaintiff "argues that the ALJ *could* have come to a different conclusion," he fails to demonstrate "that the ALJ's interpretation of the available evidence was not rational." *Id.* Thus, the Court finds that the ALJ did not err in excluding concentration issues from the RFC.

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.

Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence was properly evaluated, remand is appropriate. On remand, the ALJ must properly evaluate the medical evidence based on applicable law and consistent with this

///

---

[2] The Court notes that Plaintiff's participation in the podcast does not appear to be minimal; he stated that he was the co-host of the podcast. (AR 265-66.)

8

opinion.

IT IS SO ORDERED.

Dated: February 10, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge